No objections to this Report and Recommendation (the "R&R") have been received, and accordingly I review it for clear error.  Finding no error, clear or otherwise, I adopt the R&R as the decision of the Court.  The Petition is denied.  No certificate of appealability will issue, as reasonable jurists will not find it debatable that Petitioner has not made a substantial showing of denial of a constitutional right.  The Clerk of Court is respectfully directed to send a copy of this endorsement to Tyrone Lee, DIN 16A3013, Otisville Correctional Facility, 57 Sanitorium Road, Otisville, NY 10963-0008, and to close the case.

SO ORDERED.

*Cathy Seibel*

CATHY SEIBEL, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

TYRONE P. LEE,

Petitioner,

-against-

EARL BELL, SUPERINTENDANT CLINTON
CORRECTIONAL FACILITY,

Respondent.

-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**          12/29/23

19 Civ. 03224 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Petitioner Tyrone P. Lee ("Petitioner"), proceeding *pro se*, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 on March 22, 2019 (the "Petition").[1]  The Petition

was initially filed in the Eastern District of New York, but was transferred to this district by

order of Judge Margo K. Brodie on April 4, 2019. (Docket No. 4).  The Attorney General of the

State of New York, on behalf of Respondent Earl Bell, ("Respondent" or the "State") opposed

the motion. (Docket No. 17).  Petitioner did not submit a reply.  For the reasons set forth below, I

respectfully recommend that the Petition be denied in its entirety.

## I.    BACKGROUND

### A.    The Crimes, Trial and Sentence

Petitioner's conviction in this case arises out of a scheme to defraud Wachovia Bank and

its customers in 2010 and 2011.[2]  After convincing his girlfriend at the time, Nadia Figueroa

---

[1] A *pro se* prisoner's papers are deemed filed at the time he or she delivers them to prison authorities for forwarding to the court clerk. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) (analyzing the "*Houston* prison mailbox rule").  Petitioner certified that his Petition was delivered to the prison authorities for mailing on March 22, 2019. (Docket Nos. 1-2 at 33).  As a result, and because the timeliness of the Petition is not challenged, the Court adopts Petitioner's dates for this filing and all other filings discussed herein.

[2] The Court construes the evidence presented at trial in the light most favorable to the state. *See, e.g.*, *Murden v. Artuz*, 497 F.3d 178, 184 (2d Cir. 2007).

("Figueroa"), who later testified against him, to obtain a job as a bank teller in 2010, Petitioner

exploited her employment at a Wachovia Bank branch in Orange County, New York, to acquire

personal information about customers with large balances from the bank's computers. (Trial Tr.[3]

at 495:14-20; 502:9-12).  Specifically, Petitioner directed Figueroa to obtain names, addresses,

social security numbers, dates of birth, account numbers, account balances, driver's license

numbers, and signature cards for middle-aged men who could be easily impersonated. (*Id.* at

502:25-503:7).  Petitioner used this information to create false identifications ("fake IDs"), (*id.* at

505:12-20), and then gave these fake IDs to impersonators he hired to go to Wachovia Bank

branches in other locations to withdraw money from the customers' accounts, (*id.* at 502:14-16).

To ensure the accounts were still active prior to sending impersonators to the bank, Petitioner

would call the bank while pretending to be the customer. (*Id.* at 504:3-11).  The withdrawals

were typically in small amounts so as not to raise suspicion, (*id.* at 504:23-505:1), but the total

amount stolen was over $450,000, (*id.* at 263:14-24), $58,600 of which came from customers

named in the indictment, (*id.* at 323:5-22).

Petitioner was ultimately charged in the County Court for Orange County, New York

("Orange County Court"), with one count of Grand Larceny in the Second Degree, thirteen

counts of Identity Theft in the First Degree, and one count of Conducting a Scheme to Defraud in

the First Degree. (Docket No. 17 at 9).  At trial, the State presented evidence of Petitioner's guilt

through call logs and recordings showing that Petitioner pretended to be customers that matched

screenshots of accounts Figueroa provided to him. (Docket No. 18-9).  On April 6, 2016, after

calling no witnesses in his defense, Petitioner was convicted on all counts in the indictment.

(Trial Tr. at 749:9-753:8).  Petitioner was then sentenced, as a second felony offender, to: 7 ½ to

---

[3] "Trial Tr." refers to the transcript of Petitioner's trial, held from February 17 through 26, 2016. (Docket Nos. 18-4; 18-5; 18-6).

15 years for the Grand Larceny count; 2 to 4 years per Identity Theft count; and 1 to 3 years for the Conducting a Scheme to Defraud count. (Sentencing Tr.[4] at 20:22-21:10).  The terms of imprisonment were to be served concurrently with Petitioner's sentence under a separate Westchester County indictment. (*Id.*).  Under N.Y. Penal Law § 70.30, Petitioner's aggregate sentence was capped at 10 to 20 years.[5]

## B.    Direct Appeal

Petitioner filed a direct appeal through counsel on August 9, 2017, arguing that: (1) filing multiple indictments in various jurisdictions in New York under the same factual predicate violated New York's statutory prohibition against double jeopardy, (Docket No. 18-2 at SR. 043-049);[6] (2) the charges filed in Orange County Court were "impermissibly duplicitous and multiplicitous" because Petitioner was charged with stealing the same money from both the bank and its customers, (*id.* at SR. 050-054); (3) the consecutive sentences imposed by the Orange County Court were illegal, (*id.* at SR. 055-056); (4) the Orange County Court improperly admitted *Molineux*[7] evidence, (*id.* at SR. 056-057); (5) the prosecution "exceeded the scope of the trial court's *Molineux* ruling," (*id.* at SR. 057-058); (6) the Orange County Court abused its discretion by allowing testimony showing Petitioner had been charged separately with 37

---

[4] "Sentencing Tr." refers to the transcript of Petitioner's sentencing hearing, held on April 6, 2016. (Docket No. 18-7).

[5] Petitioner was separately charged and also pleaded guilty in three other cases: (1) Westchester County Indictment No. 14-1128 (pleaded guilty on January 20, 2015 to thirty-seven felonies, including two counts of larceny for theft from Bank of America, TD Bank and JP Morgan Chase Bank); (2) Queens County Indictment No. 2411/2015 (pleaded guilty on April 19, 2016 to two counts of falsifying business records and two counts of impersonation); and (3) Bronx County Indictment No. 1791/2014 (pleaded guilty on June 23, 2016 to one count of criminal possession of a weapon in the fourth degree). (Docket No. 17 at 10 n.2).

[6] "SR." refers to the Bates stamp used by Respondent on the appellate record submitted as an exhibit to Respondent's brief in opposition to the Petition.

[7] *Molineux* refers to the case *People v. Molineux*, 168 N.Y. 264 (1901), in which the Court of Appeals held that the prosecution cannot use crimes charged in another indictment as evidence of a defendant's guilt in the case at bar.

felonies in Westchester County, (*id.* at SR. 058-060); (7) the evidence presented was insufficient to prove Petitioner's guilt beyond a reasonable doubt and his conviction was against the weight of the evidence, (*id.* at SR. 061-065); and (8) the sentences imposed were excessive, (*id.* at SR. 065).

By Decision and Order, dated October 10, 2018, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department") affirmed Petitioner's conviction on all counts but modified the sentence imposed. *People v. Lee*, 85 N.Y.S.3d 494 (2d Dep't 2018).  The Second Department held:

> We agree with the County Court's determination to deny the defendant's motion to dismiss the indictment on statutory double jeopardy grounds. The defendant's prior convictions in Westchester County were for acts that were not part of the same criminal transaction as the charges here, and, in any event, involved losses to different victims. . . . The remaining convictions relied upon by the defendant occurred subsequent to his convictions here and, thus, could not support his double jeopardy motion. . . . Contrary to the defendant's contention, the prosecution established by a preponderance of the evidence that venue was proper in Orange County. Furthermore, viewing the evidence in the light most favorable to the prosecution we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt . . . [and] that the verdict of guilt was not against the weight of the evidence.

*Id.* at 496-97 (internal citations omitted).  Petitioner then sought leave to appeal this decision to the New York Court of Appeals (the "Court of Appeals"), which was summarily denied on January 29, 2019. *People v. Lee*, 97 N.Y.S.3d 584 (2019).

**C.     The Petition**

On March 22, 2019, Petitioner filed the instant Petition in the Eastern District of New York. (Docket No. 1).  Judge Margo K. Brodie transferred the case to this Court on April 4, 2019, pursuant to Local Civil Rule 83.3, since Petitioner was convicted and sentenced in Orange County Court, which is located within the Southern District of New York. (Docket No. 4). Construing the Petition broadly, *see Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983)

(holding that pleading requirements in habeas proceedings should not be "overly technical and stringent"), Petitioner asserts four claims: (1) that Respondent violated New York's statutory prohibition against double jeopardy; (2) that Respondent violated the Fifth Amendment's prohibition against double jeopardy; (3) that the evidence presented by Respondent was insufficient to sustain his conviction at trial and prove his guilt beyond a reasonable doubt; and (4) that Respondent failed to prove the crimes occurred in Orange County, New York, and thus venue there was improper. (Docket No. 1 at 6-12).

## II.   APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160 (ER) (PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[8]  The procedural and substantive standards are summarized below.

### A.   Exhaustion as a Procedural Bar

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b).  As the statute prescribes:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

---

[8] If Petitioner does not have access to cases cited herein that are available only by electronic database, then he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.")

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

. . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)–(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotations omitted).  If a petitioner "cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court." *Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001); *see also Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts).  A petitioner may fairly present his claim even without citing to the U.S. Constitution, by, *inter alia*: "(a) [relying] on pertinent federal cases employing constitutional analysis, (b) [relying] on state cases employing constitutional analysis in like fact situations, (c) [asserting] . . . [a] claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleging] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982).  Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40 (1999) ("[A] state prisoner must present his claims to a state supreme court in a petition for discretionary review in order to satisfy the exhaustion requirement").

However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotations omitted).  In such cases, although the claim is technically unexhausted, the district court may deem the claim to be exhausted but procedurally barred from habeas review. *See id.* at 140 ("[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only one direct appeal. *See Dasney v. People of the State of New York*, No. 15-cv-5734 (RJS), 2017 WL 253488, at *5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20);[9] *see also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals.").  Petitioners must raise record-based claims by direct appeal rather than by a collateral motion in state court. *See, e.g.*, *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB) (THK), 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record–based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011); *Lowman v. New York*, No. 09-CV- 0058T (MAT), 2011 WL

---

[9] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. App. R. 500.20(a) (emphasis added).

90996, at *9 (W.D.N.Y. Jan. 11, 2011) ("Collateral review of this claim—by way of another

CPL § 440 motion—is also barred because the claim is a matter of record that could have been

raised on direct appeal, but unjustifiably was not.") (citing N.Y. Criminal Procedure Law

("C.P.L.") § 440.10(2)(c)).[10]

     To avoid the procedural default of an unexhausted claim, a petitioner may show "cause

for the default and prejudice, or that failure to consider the claim will result in miscarriage of

justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir.

2003).

**B.**    **Adequate and Independent State Grounds as a Procedural Bar**

     "It is well established that federal courts will not review questions of federal law

presented in a habeas petition when the state court's decision rests upon a state-law ground that

'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556

U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729).  This preclusion applies even if the

state court alternatively rules on the merits of the federal claim, so long as there is an adequate

and independent state ground that would bar the claim in state court. *See, e.g.*, *Harris v. Reed*,

489 U.S. 255, 264 n.10 (1989); *accord Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

     "A state court decision will be 'independent' when it 'fairly appears' to rest primarily on

state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v.*

*Walker*, 458 F.3d 130, 138 (2d Cir. 2006)).  Typically, a ground is adequate "only if it is based

on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia*, 188

---

[10] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . ."

F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003).  A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (internal quotations omitted).  However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Cotto*, 331 F.3d at 240 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).  In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (internal quotations omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner must "show 'cause' for the default and 'prejudice attributable thereto,' . . . or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)).

## C.    AEDPA Standard of Review

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015).  An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotations omitted). Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

If a state court adjudicates a federal claim on the merits, the Court must apply AEDPA deference to that state court ruling.[11] 28 U.S.C. § 2254(d)(1)–(2).  In the context of AEDPA deference, the phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state–court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  "A state court decision is contrary to such clearly established federal law if it 'applies a rule that contradicts the governing law set forth in the Supreme Court's cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

---

[11] If, by contrast, a state court does not adjudicate a federal claim on the merits, "AEDPA deference is not required . . . [and] conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *DeBerry v. Portuondo*, 403 F.3d 57, 66–67 (2d Cir. 2005).

result different from its precedent.'" *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quoting *Boyette v. Lefevre*, 246 F.3d 76, 90 (2d Cir. 2001)).  A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than "incorrect or erroneous" — it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of [the state court's] decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004)). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).  If a state court decision does not contain reasons for the dismissal of a defendant's federal claim, the Court must "consider 'what arguments or theories . . . could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (quoting *Richter*, 562 U.S. at 102).

When reviewing an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting the state court's factual holding by "clear and convincing evidence." *Id.*; *see also Chapman v. Vanzandt*, No. 96 CIV. 6940 (JGK), 1997 WL 375668, at *4 (S.D.N.Y. July 8, 1997).

## III.   DISCUSSION

### A.   New York's Statutory Prohibition Against Double Jeopardy

Petitioner argues that Respondent violated New York's statutory prohibition against double jeopardy by charging him in multiple counties for the same criminal enterprise. (Docket No. 1 at 6).  Respondent counters that Petitioner's claim is made under state law and, thus, is not subject to habeas review. (Docket No. 17 at 3).  Respondent further contends that "to the extent that [P]etitioner is claiming that he was prosecuted in violation of his rights under the Double-Jeopardy Clause of the Fifth Amendment, his claim is procedurally barred and meritless." (*Id.*). The Court agrees with Respondent.

According to Petitioner, the prosecutions against him in Westchester, Bronx, Orange and Queens counties, all arose "out of the same alleged criminal enterprise" and should not have been charged separately in different jurisdictions. (Docket No. 1 at 6).  Petitioner asserts that Respondent made him a plea offer in Westchester County that would have prevented further prosecutions in neighboring counties, and would have also resulted in the dismissal of the charges pending in the Bronx, if accepted. (*Id.* at 6-7).  Petitioner further maintains that when he rejected this plea offer, Respondent filed new charges against him in Queens, as well as in Orange County, which form the basis of the Petition, on the same predicate acts, violating N.Y.

C.P.L. §§ 40.20;[12] 40.40.[13]  Respondent correctly asserts that this claim is not a cognizable basis for habeas relief since "[t]he issue . . . is one of interpretation of the New York statute, and not of the Double Jeopardy Clause[] [and] [t]he proper construction of a state statute or its application to a habeas petitioner's case is beyond the scope of a federal habeas inquiry." *Lopez v. Fischer*, No. 06 Civ. 4760 (AKH), 2007 WL 1259146, at \*4 (S.D.N.Y. Apr. 27, 2007).

It is well settled that federal courts generally may not review state court decisions that rest on "independent and adequate" state grounds, regardless of "whether [that ground is] substantive or procedural." *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010).  Where a state court addresses a defendant's substantive claim on the merits, "a federal court may not grant a habeas petition with regard to [that] claim" unless the state court's decision: (1) "was contrary to, or involved an unreasonable application of" federal law; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." *Driver v. Coveny*, 19 Civ. 3860 (DC), 2023 WL 4066558, at \*5 (E.D.N.Y. June 15, 2023) (quoting 28 U.S.C. § 2254(d)).  This is a high bar, as the state court "must be accorded substantial deference" and its decision only reversed if it is "so lacking in justification that there was no possibility for fairminded disagreement." *Id.* (cleaned up).

Here, the Second Department held that Petitioner's conviction in Orange County Court was "for acts that were not part of the same criminal transaction" as the Westchester County prosecution "and involved losses to different victims." *Lee*, 85 N.Y.S.3d at 496.  As a result, the

---

[12] N.Y. C.P.L. § 40.20(2) states that: "[a] person may not be prosecuted for two offenses based upon the same act or criminal transaction unless . . . (e) Each offense involves death, injury, loss or other consequence to a different victim. . . ."

[13] N.Y. C.P.L. § 40.40(1) states that: "[w]here two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, pursuant to paragraph (a) of subdivision two of section 200.20, such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses even though such separate prosecutions are not otherwise barred by any other section of this article. . . ."

crimes "were not joinable with the crimes charged in the Westchester County indictment, as [it] did not have geographic jurisdiction over them." *Id.*  In ruling on the merits of Petitioner's N.Y. C.P.L. § 40.20 and § 40.40 arguments, the Second Department cited to multiple cases holding that New York's statutory prohibition against double jeopardy does not bar a defendant from being charged in different counties if there were victims in those counties, regardless of whether the predicate acts stem from the same underlying scheme. *People v. Luongo*, 418 N.Y.S.2d 365, 370-71 (1979) ("[E]ach larceny [is] an independent criminal transaction which can be prosecuted independently. Inasmuch as none of the victims named in the Suffolk County indictment were subjects of the subsequent Nassau County prosecution, there was no bar to the second trial"); *People v. Dallas*, 848 N.Y.S.2d 132, 133 (1st Dep't 2007) ("Nor was there a violation of defendant's statutory protection against double jeopardy. The sale of false identification [in one county] and possession in [another county] of additional documents of the same nature for the same purpose of sale to other persons" was not a single transaction); *People v. Lindsly*, 472 N.Y.S.2d 115, 118 (2d Dep't 1984) (allowing prosecution in multiple counties even though the alleged acts were from the same scheme).  The Second Department decision clearly rests on independent and adequate state law grounds, and Petitioner's challenge to New York's double jeopardy statute is, therefore, "beyond the scope of a federal habeas inquiry." *Fischer*, 2007 WL 1259146, at *4.  However, Petitioner's claim can survive if he establishes that the State's application of N.Y. C.P.L. § 40.20 and § 40.40 involved an unreasonable application of federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2).

The State's application of New York's Criminal Procedure Law does not unreasonably apply federal law since its statutory double jeopardy framework is meant to be more stringent

than the Fifth Amendment. *People v. Mercado*, 695 N.Y.S.2d 676, 679 (Sup. Ct., Bronx Cnty. 1999); ("By enacting [N.Y. C.P.L. § 40.20], the Legislature, dissatisfied with the limited protection of the constitutional double jeopardy provisions, provided a far more comprehensive protection against separate prosecutions for two offenses based upon the same act or criminal transaction") (internal citations and quotations omitted); *People v. Serrano*, 462 N.Y.S.2d 989, 990 (Sup. Ct., Kings Cnty. 1983) (same); *c.f. Harris v. Perez*, 14-CV-7218 (SLT), 2017 WL 5468782, at *5 (E.D.N.Y. Nov. 13, 2017) (holding that even if a state court applies state law incorrectly, where the law is meant to "exceed the protections provided under federal law or the United States Constitution," it is not reviewable "on federal habeas corpus") (internal citations and quotations omitted).  Therefore, Petitioner's statutory double jeopardy argument fails on this basis alone.

However, assuming, *arguendo*, that New York's double jeopardy statute applied federal law, Petitioner's prosecution was not an unreasonable application of it.  The double jeopardy clause of the Fifth Amendment permits prosecution under the same circumstances presented here.  The charges against Petitioner in the other counties were either different from the instant case, (*e.g.*, falsifying business records and criminal impersonation in Queens; criminal possession of a weapon in Bronx), or had different victims (*e.g.*, Bank of America, TD Bank and JP Morgan Chase Bank in Westchester).  Thus, Petitioner's prosecution in multiple counties for acts stemming from the same criminal scheme was not a violation of the Fifth Amendment's double jeopardy clause nor an unreasonable application of it.  *See United States v. Christian*, 528 F. Supp. 3d 174, 189 (S.D.N.Y. 2021) ("As the Supreme Court explained in *Albernaz v. United States*, '[i]t is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause'") (quoting *Albernaz v. United*

*States*, 450 U.S. 333, 344 n.3) (1981)); *Brown v. United States*, No. 02 Civ. 9305 (HB), 2003 WL 22047879, at *3 (S.D.N.Y. Aug. 29, 2003) (holding that "the same conduct may be treated as two offenses" where "each offense requires proof of a fact which the other does not" such as a different victim) (internal quotation omitted).

Finally, charging Petitioner in Orange County in addition to Queens, Bronx and Westchester counties was not unreasonable given the facts presented. Petitioner argues that double jeopardy barred his prosecution in Orange County since: (1) there were "various elements common" to the Orange and Westchester County indictments; and (2) the evidence used to convict him in Orange County was obtained through a search warrant executed in the Bronx; thus, he should have been charged there. (Docket No. 1 at 7). These arguments fail because the victims were in different counties, the acts he committed in furtherance of his scheme occurred in different years, and Respondent was under no obligation to file charges in the county where evidence was collected.

Under N.Y. C.P.L. § 20.40, a defendant may be charged in any county where an element of the offense occurred or, "[t]he offense committed was a result offense and the result occurred in such county." *Id.* §§ 1(a); 2(a). When a defendant is charged with grand larceny, he may be charged in the county where the money was stolen, regardless of whether the evidence collected was in that county. *See, e.g.*, *People v. Hurley*, 78 N.Y.S.3d 74, 75 (1st Dep't 2018) ("Venue in New York County was proper, because the reliance element of grand larceny by false pretenses was established by evidence that a government agency located in Manhattan ultimately relied on defendant's false statement when it finally granted him benefits"); *People v. Blaich*, 608 N.Y.S.2d 265, 265 (2d Dep't 1994) ("[a] person may be convicted of an offense in a county in which an element of that offense occurred. It is clear insofar as the defendant took [a victim's]

money from her under false pretenses in Putnam County" that county had jurisdiction). Consequently, Petitioner's prosecution in this case was not an unreasonable application of the facts since at least one of the victims, Wachovia Bank, was in Orange County, and Petitioner drove Figueroa to the bank in that county with the intent to steal customers' confidential information.  Accordingly, I respectfully recommend rejecting Petitioner's statutory double jeopardy claim.

**B.      Petitioner's Fifth Amendment Claim**

Petitioner argues, for the first time in the Petition, that his prosecution in Orange County Court was barred by the Fifth Amendment's double jeopardy clause.  Petitioner's argument is identical to his statutory double jeopardy claim, and he does not differentiate between the two claims in any way. (Docket No. 1 at 6-9).  Respondent counters that Petitioner's Fifth Amendment claim is procedurally barred since it was not raised in prior state court proceedings. (Docket No. 17 at 13-13).  Further, Respondent maintains that even if the Court were to reach the merits of the claim, it should be rejected since: (1) the charges filed in Queens and the Bronx involved different offenses and Petitioner had yet to be convicted in those counties when he was sentenced in this case, (*id.* at 13); and (2) the Westchester case involved different victims and "occurred in different years," (Docket No. 17 at 14).  The Court agrees with Respondent.

Federal courts may not entertain claims or defenses in habeas petitions if they were not previously presented, and exhausted, in state court. "This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman*, 501 U.S. at 731.  Furthermore, when a defendant may no longer present his federal claim in state court because it is procedurally barred, federal courts may deem the claim exhausted for purposes of habeas review. *Id.* at 732 ("a

habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance . . . [and] meets the technical requirements for exhaustion"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted") (quoting *Coleman*, 501 U.S. at 735 n.1).

Here, Petitioner did not raise his Fifth Amendment double jeopardy claim in state court. (*See, e.g.*, Docket No. 18-2 at SR. 043; SR. 167-72) (Petitioner's counseled appellate briefs argued only New York statutory double jeopardy claims). Nor can he do so now since New York only allows defendants a single appeal from conviction, N.Y. C.P.L. § 450.10, and record-based collateral appeals are not permitted. *See* N.Y. C.P.L. § 440.10. Therefore, the claim is deemed exhausted, but procedurally barred from further review. "When a claim is in that posture, it . . . cannot be heard on federal habeas corpus review." *Ortiz v. Bradt*, No. 13 CIV. 5420 (BMC), 2013 WL 5775695, at *6 (E.D.N.Y. Oct. 25, 2013). The only way Petitioner can overcome this procedural default is to show: (1) cause for the default and prejudice therefrom; or (2) actual innocence such that refusal to consider the defaulted claim will result in a miscarriage of justice. *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("An applicant seeking habeas relief may escape dismissal of the merits of a procedurally defaulted claim only by demonstrating cause for the default and prejudice or by showing that he is actually innocent of the crime for which he was convicted") (internal quotations omitted); *Reese v. Alexander*, 37 F. App'x. 5, 8 (2d Cir. 2002) (same).

This is an exacting standard that Petitioner cannot meet.  First, he does not argue or show cause for failing to raise the Fifth Amendment claim previously.  Therefore, the Court need not analyze whether Petitioner would be prejudiced by the Court's refusal to consider this claim.[14] *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) ("Since [petitioner] has failed to show cause, there is no need to address the prejudice requirement, and federal habeas review . . . is unavailable"); *Frazier v. United States*, Nos. 19-CV-8738 (CS), 17-CR-364-7 (CS), 2021 WL 111638, at *3 n.6 (S.D.N.Y. Jan. 12, 2021) ("[a]s there is no showing of cause, I need not address prejudice").

Second, Petitioner has failed to demonstrate actual innocence or that application of the procedural default would result in a miscarriage of justice.  This is a "heavy burden" that only applies in "extraordinary cases," requiring presentation of new evidence establishing, by a preponderance of the evidence, that no reasonable juror would have found defendant guilty under the circumstances. *Calderon v. Perez*, No. 10 Civ. 2562 (GBD) (AJP), 2011 WL 293709, at *21 (S.D.N.Y. Jan. 28, 2011) (citations and internal quotations omitted).  Petitioner does not claim, nor present any evidence of, actual innocence in the Petition.  His entire argument is that prosecution in the instant case is barred by the Fifth Amendment, not that he is innocent of the charges filed. (Docket No. 1 at 6-9).  Therefore, Petitioner cannot overcome the procedural default of his Fifth Amendment claim and it should be rejected.

## C.    Sufficiency of the Evidence Presented at Trial

Petitioner's third argument is that the evidence presented at trial was legally insufficient to support a guilty verdict for the crimes charged. (Docket No. 1 at 11-13).  Specifically,

---

[14] Even assuming, *arguendo*, that Petitioner had shown cause for failing to raise his Fifth Amendment claim previously, he could not prove prejudice since the Fifth Amendment's double jeopardy clause does not prohibit prosecution in circumstances similar to this case. *See supra*, Section III.A.

Petitioner claims that: (1) while he was convicted of stealing money from Wachovia Bank, "the Wachovia witness testified the money was actually stolen from account holders" who were reimbursed by the bank; (2) telephone calls played for the jury were not from the relevant time period and were with JP Morgan Chase Bank, not Wachovia Bank; and (3) he and Figueroa were charged with monetary theft, but Figueroa testified that she only stole account information. (*Id.* at 11).  Respondent contends that the State presented sufficient evidence to support Petitioner's conviction under AEDPA. (Docket No. 17 at 16).  Specifically, Respondent asserts that: (1) Petitioner was criminally liable for the withdrawals because he directed Figueroa to obtain account-holder information so he could make withdrawals from their accounts; and (2) the State presented documentary evidence at trial that Petitioner was in possession of confidential account-holder information obtained by Figueroa while working at Wachovia Bank. (*Id.* at 17).

In evaluating a sufficiency of the evidence claim under AEDPA, the Court must give deference to the jury's factual determinations and may not substitute its own judgment for that of the jurors. *See Santone v. Fischer*, 689 F.3d 138, 155 (2d Cir. 2012).  To prevail, the Petitioner must prove that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Einaugler v. Sup. Ct. of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (internal quotation omitted).  This requires the Court to determine, "whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law," (*id.*), while "viewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "Under this rigorous standard, the habeas court faced with a record of historical facts that supports conflicting inferences must presume, even if it does not affirmatively appear in the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must

defer to that resolution." *Willson v. Berbary*, 421 F. Supp. 2d 589, 597 (W.D.N.Y. 2006) (internal quotations omitted).

Here, the State presented sufficient evidence to sustain Petitioner's conviction.  To be convicted of grand larceny in the second degree in New York, the State must prove that the defendant stole property with a value greater than fifty thousand dollars. N.Y. Penal Law § 155.40.  "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . he wrongfully takes, obtains or withholds such property from an owner thereof." (*Id.* § 155.05).  Proving identity theft in the first degree requires showing that defendant "knowingly and with intent to defraud assume[d] the identity of another person by presenting himself [] as that other person, or by acting as that other person or by using personal identifying information of that other person" to obtain another person's "money, property or services . . . or [to] cause[] financial loss to such person." (*Id.* § 190.80). Finally, to prove a defendant committed a scheme to defraud in the first degree the evidence must establish that he "engage[d] in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons." (*Id.* § 190.65).  When "viewing the evidence in the light most favorable to the prosecution," it is clear that there was sufficient evidence to support Petitioner's convictions. *Jackson*, 443 U.S. at 319.

The State presented substantial evidence of Petitioner's guilt, including witnesses and documentary evidence.  Petitioner's girlfriend and accomplice testified against him at trial and described how "at [P]etitioner's urging and with his assistance, she got a summer job at Wachovia in 2010" and that Petitioner then "asked her to obtain personal information and

signature cards for accountholders with large balances, so that [P]etitioner's customer impersonators . . . could make in-person withdrawals at out-of-state branches." (Docket No. 17 at 17).  She then testified that through her employment, she obtained and provided Petitioner with personal information for over 207 Wachovia Bank customers. (Trial Tr. at 263; 502-11). Witnesses from Wachovia Bank testified that this information was used to access their system and take money from those customers.[15] (*Id.* at 254).  In addition, the State produced recorded telephone calls showing Petitioner called the bank to confirm that the customers' accounts were still active, as well as photographs from Petitioner's phone with the customers' account information. (Docket No. 18-9 at 1-36; 52-61).  The amount stolen, according to Wachovia Bank's witnesses, was over $450,000. (Trial Tr. at 291:19-21).  Taken together, this evidence is sufficient to support Petitioner's conviction. *See, e.g.*, *Wright v. West*, 505 U.S. 277, 295 (1992) (reversing Fourth Circuit's decision that evidence was insufficient to support a defendant's conviction for grand larceny where the defense failed to explain his possession of the stolen property at-issue in the case).  Accordingly, I respectfully recommend denying Petitioner's sufficiency of the evidence claim.

## D.    Venue in Orange County, New York

Petitioner's final argument is that venue in Orange County was improper because the State failed to prove that the alleged wrongful conduct occurred there, and "there was no proof that [P]etitioner participated in a scheme." (Docket No. 1 at 12).  Respondent maintains that this claim is not cognizable on habeas review because venue is purely a matter of state law. (Docket No. 17 at 19).  Respondent further asserts that, even if the Court reaches the merits of

---

[15] Contrary to Petitioner's argument, it does not matter whether the money was taken directly from Wachovia Bank or its account-holders. The State merely needed to prove that "he brought about the purported transfers . . . to himself or another, and that he did so with the intent to deprive the true owners of their propert[y]." *People v. Smith*, 97 N.Y.S.3d 281, 282 (2d Dep't 2019) (affirming defendant's conviction for grand larceny in the second degree).

Petitioner's argument, venue was proper in Orange County because the State only needed to prove that "an element of the offense[s]" of conviction occurred there. (*Id.*).  The Court agrees with Respondent.

The Second Circuit has held that challenges to a state court's venue "fail[] to raise an issue of federal law, which is a prerequisite to habeas relief." *U.S. ex rel. Roche v. Scully*, 739 F.2d 739, 741 (2d Cir. 1984) ("Although New York has chosen to style § 20.40 of its Criminal Procedure Law in terms of jurisdiction, the statute is in fact concerned with venue. . . . A violation of its laws allocating jurisdiction among its various counties does not create a federal constitutional issue"); *see also Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005) (holding that challenging venue after conviction in state court "provide[s] no basis for habeas relief"); *Hicks v. Lacy*, Nos. 99 Civ. 4523 (DLC) & 00 Civ. 2307 (DLC), 2003 WL 22510323, at *3 (S.D.N.Y. Nov. 4, 2003) ("a claim based on the law allocating jurisdiction in the state court system does not present a federal constitutional issue").  Accordingly, I respectfully recommend dismissing Petitioner's venue claim on procedural grounds.

Nevertheless, assuming, *arguendo*, that Petitioner overcame the procedural bar, the claim would still fail.  New York's venue statute states that venue is proper "within such county sufficient to establish: (a) [a]n element of such offense; or (b) [a]n attempt or conspiracy to commit such offense." N.Y. C.P.L §§ 20.40(1).[16]  Here, the government presented substantial evidence that part of Petitioner's crimes were committed in Orange County.  For example, the Wachovia Bank branch that Petitioner stole confidential customer information from through his girlfriend was in Orange County. (Trial Tr. at 499:20-23).  In addition, Petitioner admits that

---

[16] New York's venue rules are styled as issues of "jurisdiction." *Scully*, 739 F.2d at 741 ("Although New York has chosen to style § 20.40 of its Criminal Procedure Law in terms of 'jurisdiction,' the statute is in fact concerned with venue.")

"[t]here is, at best, some proof that connected to him [sic] made a phone call into an automatic system, but other than that, there is no scheme to defraud." (Docket No. 1 at 12).  Moreover, Figueroa testified that Petitioner drove her to work at the Orange County Wachovia Bank branch "every day." (Trial Tr. at 499:24-25).  Since intent is an element of all three statutes the State charged Petitioner under, (*see* N.Y. Penal Law §§ 155.40; 155.05; 190.80), and Petitioner intentionally drove Figueroa to the bank branch in Orange County where he directed her to obtain customer information he used to steal money, the state has satisfied its burden of proving that venue was proper in Orange County. *See, e.g.*, *People v. Nabi*, 87 N.Y.S.3d 76, 78 (2d Dep't 2018) (affirming venue was proper where the prosecution established at trial that "certain acts" taken by a defendant "in furtherance of the" charged crime occurred in the county.)

Accordingly, I respectfully recommend finding that Petitioner has failed to establish that venue in Orange County was improper.

## IV.  CONCLUSION

For the foregoing reasons, I conclude and respectfully recommend that the Petition be denied.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The Clerk of Court is requested to mail a copy of this Report and Recommendation to the *pro se* Petitioner.

## V.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the

- 24 -

receipt of this Report and Recommendation to serve and file written objections.  If copies of this

Report and Recommendation are served upon the parties by mail, the parties shall have

seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R.

Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the

Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United

States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New

York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Cathy

Seibel and not to the undersigned.  Failure to file timely objections to this Report and

Recommendation will preclude later appellate review of any order of judgment that will be

rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.

2008).

Dated:  September 22, 2023
     White Plains, New York

**RESPECTFULLY SUBMITTED,**

JUDITH C. McCARTHY
United States Magistrate Judge